# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Geoffrey Geist,**

      **Plaintiff,**

v.                                                                      Case No. 17-cv-2317-JWL

**Aaron Handke d/b/a**
**FoxPoint Trucks, LLC; and**
**OTRLeasing, LLC,**

      **Defendants.**

## **MEMORANDUM & ORDER**

Plaintiff Geoffrey Geist filed this lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C §§ 201 set seq., seeking to recover unpaid overtime compensation.[1] In the pretrial order, defendants contend that plaintiff was not entitled to overtime compensation under the FLSA because plaintiff was "exempt" from the overtime provisions of the FLSA under the administrative exemption. This matter is presently before the court on plaintiff's motion for partial summary judgment in which plaintiff contends that defendants cannot meet their burden of establishing that plaintiff falls within the administrative exemption to the FLSA's overtime requirements. As will be explained, the motion is denied.

## **I.  Facts**

---

[1] He further alleges that defendants violated the FLSA by terminating plaintiff's employment in retaliation for plaintiff's assertion of his rights under the FLSA. That claim is not implicated by the motion pending before the court.

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to defendants as the nonmoving parties. Defendant OTRLeasing, LLC ("OTR") is a wholly owned subsidiary of defendant FoxPoint Trucks, LLC. The primary business of OTR is to lease tractors to independent owner-operator tractor-trailer truck drivers. Plaintiff Geoffrey Geist began his employment with OTR on March 1, 2015 as a sales representative. Plaintiff testified that, as a sales representative, he compared completed lease applications submitted by drivers to certain internal credit guidelines that plaintiff had been provided by OTR. These guidelines included, by way of example, whether the applicant had an "open" bankruptcy, whether the applicant had received a "DWI" in the last 5 years, whether the applicant had a certain amount of money available for a down payment on a truck, and whether the applicant had a criminal background relating to theft or financial crimes. Primarily, sales representatives were reviewing applications for "automatic disqualifiers" such as convictions for theft. If the application satisfied the guidelines, then plaintiff turned the application over to Roman Fields, OTR's Vice President of Operations, who then determined whether to approve that application. Plaintiff testified that, during this time frame, if he was uncertain as to whether an application satisfied the guidelines, then Mr. Fields would make that determination. If Mr. Fields approved an application, plaintiff would contact the applicant, notify the applicant that he or she had been approved, and begin the process of attempting to sell a lease on a tractor from OTR's inventory to the applicant.

After plaintiff gained some experience, OTR permitted plaintiff to formally approve an application that met the specific guidelines established by OTR. During this time frame, plaintiff still forwarded applications to Mr. Fields if he was uncertain as to whether a given application

2

satisfied the guidelines or if an application did not meet the guidelines but might warrant an exception. At some point, and the record is unclear as to when this change occurred, OTR no longer considered plaintiff a "sales representative" and, instead, considered plaintiff the "lead underwriter" in the office. Documents maintained by OTR in the ordinary course of business reflect that plaintiff's title was changed to "sales rep/lead underwriter." Sales representatives were then submitting viable applications to plaintiff for approval. While plaintiff testified that he did not have the authority to make any exceptions in terms of approving applications that did not fit the credit guidelines and that Mr. Fields still made those decisions, Mr. Fields testified that plaintiff, as the lead underwriter, was responsible for deciding in the first instance whether an application should receive additional consideration even if it did not fit the credit guidelines. Moreover, according to Mr. Fields, plaintiff was involved in all subsequent discussions about whether an application warranted an exception and had input into the final approval decision. Blake Fulton, OTR's Chief Operations Officer, testified that plaintiff had the authority to make his own decisions in connection with the "nuanced" underwriting process and that he had the discretion to grant an exception for an application that did not otherwise fit the underwriting guidelines. Similarly, Aaron Handke, OTR's Chief Executive Officer, testified that plaintiff was responsible for evaluating which applications might warrant an exception and which applications did not. Mr. Handke, however, testified that plaintiff did not have the authority to make an exception to approve an application that did not fit the guidelines; he testified that plaintiff would have had to obtain permission from Mr. Fulton to make an exception.

Defendant's evidence reflects that plaintiff was also responsible for helping OTR continue to develop, modify and refine its underwriting guidelines and procedures—which changed

3

frequently. According to Mr. Handke, plaintiff worked on "multiple analytics projects" relating to developing OTR's underwriting guidelines.

Regardless of how many hours plaintiff worked in a week, OTR paid plaintiff a fixed salary of $73,000 per year. OTR considered plaintiff exempt from the overtime provisions of the FLSA based on the administrative exemption to those provisions. OTR terminated plaintiff's employment on March 10, 2017 after plaintiff and Mr. Fulton had a "heated disagreement" in the workplace.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

4

**III.     The Administrative Exemption**

Under the FLSA, employees are entitled to overtime pay (*i.e*., one and one-half times their regular rate) for any hours worked in excess of 40 hours per week, unless they fall within one of the various exemptions supplied by the Act.  29 U.S.C. §§ 207, 213.  Among the FLSA's exemptions is one that exempts from the overtime requirements of § 207 "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  An employee working in a "bona fide administrative capacity" is someone:

(1)     Compensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  An employee who satisfies all three elements falls within this "administrative exemption."  *Lutz v. Huntington Bancshares, Inc*., 815 F.3d 988, 992 (6th Cir. 2016). It is the employer's burden to prove that an employee falls "plainly and unmistakably" within an FLSA exemption.  *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir. 2012) (quotation omitted).

Plaintiff does not dispute that the first element for application of the administrative exemption is satisfied, but he contends that the second and third elements are not applicable and that OTR cannot prove those elements in this case.[2]  In analyzing those elements, the court's task

---

[2] Plaintiff contends that the court must narrowly construe the administrative exemption against defendants in resolving the motion.  But in an opinion issued one month prior to the filing of

is to determine plaintiff's "primary" job duty and then to determine whether that primary duty fits within the administrative exemption. *Id*. at 827. An employee's "primary duty" means "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The Tenth Circuit has cautioned that the primary duty analysis is a factual one. *See Maestas*, 664 F.3d at 828-29. Summary judgment is proper, then, only if there is no genuine dispute regarding plaintiff's primary duties. Here, the record reflects numerous factual disputes about both the nature and scope of plaintiff's duties as well as which of plaintiff's duties are primary. Because those disputes are genuine and material to the core classification issue before the court, summary judgment must be denied.

A.   *Directly Related to the Management or General Business Operations*

In arguing that defendant cannot satisfy the second element of the exemption, plaintiff relies almost exclusively on 29 C.F.R. § 541.205, an interpretive regulation that utilized an "administrative-production dichotomy" to interpret the second element of the exemption. Plaintiff has marshaled his evidence and his argument to fit into that framework, but that regulation no longer exists. *See* 29 C.F.R. § 541.200 et seq. As a result, the cases cited by plaintiff and the arguments made by plaintiff that rely on that regulation are unhelpful and, in fact, more recent cases have found that the administrative-production framework is of little use outside the manufacturing or traditional production context. *See Tsyn v. Wells Fargo Advisors*, LLC, 2016

---

plaintiff's motion, the Supreme Court rejected the narrow-construction principle as a guidepost for interpreting the FLSA. *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1143 (2018). In *Encino,* the Court held that courts "have no license to give [exemptions] anything but a fair reading." *Id.*

6

WL 612926, at *15 (N.D. Cal. Feb. 16, 2016) (collecting cases); *Calderon v. GEICO General Ins. Co.*, 809 F.3d 111, 123-24 (4th Cir. 2015) (the administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context); *Morgan v. Zieger Health Care Corp.*, 2015 WL 4040465, at *11 (E.D. Mich. June 5, 2015) (denying plaintiff's motion for partial summary judgment on administrative exemption where plaintiff relied on outdated regulation, 29 C.F.R. § 541.205, and thus failed to address or distinguish relevant standards and case law); *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012) ("The dichotomy's focus on a traditional manufacturing line makes it 'not terribly useful' when applied to service workers."); *Smith v. Bank of New York Mellon Corp.*, 2011 WL 836858, at *16 (W.D. Penn. Jan. 20, 2011) (declining to address arguments based on outdated regulation and cases relying on that regulation).

The court, then, analyzes the evidence in the record under the current regulation interpreting the second element. That regulation, 29 C.F.R. § 541.201(a), states that an employee meets the second element of the exemption if that employee performs work "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."[3] The regulation further provides examples of the type of work that is directly related to management or general business operations, explaining that qualifying work

> includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations,

---

[3] Plaintiff does not dispute that he performed "office or non-manual work" for purposes of the second element.

> government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b) (emphasis added). "And Labor Department comments to the applicable regulations explain that 'the administrative operations of the business include the work of employees "servicing" the business, such as, for example, 'advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.'" *Calderon*, 809 F.3d at 123 (quoting 69 Fed. Reg. at 22,138) (appropriate focus is whether employee's duties involve the "running of the business" as opposed to the "day-to-day carrying out of the business's affairs") (citations and quotations omitted)).

Plaintiff contends that the undisputed facts demonstrate that plaintiff's primary duty was selling leases to truck drivers. Contrary to plaintiff's assertion, there is ample evidence that, viewed in the light most favorable to defendants, suggests that plaintiff's duties included reviewing lease applications to evaluate the creditworthiness of drivers applying for leases and, at some point, determining whether OTR would approve or disapprove those applications. Applying the pertinent regulations to employees performing similar "underwriting" duties, the district court in *Lutz v. Huntington Bancshares Inc.*, 2014 WL 2890170, at *13-14 (S.D. Ohio June 25, 2014), held that those employees, as a matter of law, satisfied the second element of the administrative exemption. Granting the employer's motion for summary judgment and denying the employees' motion for summary judgment on that issue, the district court explained:

> Plaintiffs' primary duties, as stated above, consist of reviewing loan application files to evaluate the creditworthiness of customers applying for home loans and determining whether the Bank will approve or disapprove the loan. Various aspects of these duties are analogous to various aspects of the "functional" job duties set forth in 29 C.F.R. § 541.201(b). For example, the fact that Plaintiffs can disapprove a potential loan agreement makes their duties analogous to a quality control

> employee who prevents a defective product from being sold or a legal/regulatory compliance professional who counsels against selling a certain product or using a certain marketing technique. *See* 29 C.F.R. § 541.201(b). In each example, the employees "service" the business (and therefore qualify for the administrative exemption under § 541.201(a)) by looking beyond short-term sales to protecting the company's long-term interests.
>
> Similarly, the fact that Plaintiffs work with loan applications that already exist (rather than soliciting and working with the customer to create the loan application) makes their role loosely analogous to that of an insurance claims adjuster who makes decisions on accounts that have already been sold to consumers. *See* 29 C.F.R. § 541.203(a) (listing insurance claims adjuster as an example of a position that qualifies for the administrative exemption). In that sense, both Plaintiffs and insurance claims adjusters provide a service that does not generate business for their employers, but that is necessary for their employers to do business. In other words, those employees do not perform "production" roles, but instead perform roles that are "ancillary" to the employer's principal production activity.

*Id.* at *13. The *Lutz* court also highlighted that the employees analyzed information regarding the financial status of loan applicants, accepted or rejected loan packages based on the applicant's circumstances and occasionally suggested alternative products. *Id.* In light of those duties, the court found that the employee played a "nuanced role" analogous to the hypothetical financial services employee described in 29 C.F.R. § 541.203(b), who would qualify for the administrative exemption if he or she performs duties "such as collecting and analyzing information regarding a customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing, or promoting the employer's financial products." *Id.* On appeal, the Sixth Circuit affirmed the grant of summary judgment in favor of the employer. 815 F.3d 988, 993 (6th Cir. 2016) ("Huntington's underwriters perform administrative work because they assist in the running and servicing of the Bank's

business by making decisions about when Huntington should take on certain kinds of credit risk, something that is ancillary to the Bank's principal production activity of selling loans.").

The court finds the *Lutz* decision helpful in light of the analogous facts presented here. At a minimum, the evidence in the record permits an inference that plaintiff was analyzing information about the financial status and creditworthiness of lease applicants and then advising management on whether to approve or disapprove applications. In addition to the points articulated by the court in *Lutz*, the evidence permits an inference that plaintiff's duties are analogous to the hypothetical credit manager described in 29 C.F.R. § 541.703(b)(7), which explains that an employee who "makes and administers the credit policy of the employer . . . and makes decisions on whether to exceed credit limits would be performing work exempt under § 541.200." This is particularly true in light of evidence that plaintiff was responsible for helping OTR continue to develop, modify and refine its underwriting guidelines and procedures.

Plaintiff urges the court to follow *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012), where the court analyzed the job duties of underwriters who, according to plaintiff, performed duties similar to those performed by plaintiff. In that case, the court held as a matter of law that the employees did not qualify for the administrative exemption because they did not perform work directly related to the management or general business operations of the employer. *Id*. at 1047-48. But in that case, it was apparently undisputed that the underwriters' duties were limited to "confirming" that mortgage applications satisfied defendants' underwriting guidelines. *See id*. at 1043 (plaintiffs verified accuracy of data and reviewed application for compliance with guidelines). Significantly, the plaintiffs in *Bollinger* could recommend approval of applications that did not meet the guidelines, but the final approval decision went to another

10

department. *See id.* at 1044. In this case, defendants have come forward with evidence that distinguishes plaintiff's duties from the duties examined in *Bollinger*, including evidence that plaintiff had the authority to approve applications that did not meet the underwriting guidelines and evidence that plaintiff assisted in developing and modifying OTR's underwriting guidelines. *Bollinger*, then, is not persuasive.[4]

In short, the record contains evidence from which a reasonable factfinder could determine that plaintiff's primary duty directly related to the management or general business operations of OTR.

### B.   *Discretion and Independent Judgment*

Plaintiff also challenges defendants' ability to satisfy the third element of the test for administrative exemption. To qualify for the exemption, defendant will have to show that plaintiff's primary duty includes "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). As explained in the pertinent regulations, the exercise of discretion and independent judgment involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* § 514.202(a). In assessing whether an employee exercises discretion and independent judgment, the court considers several factors, including:

---

[4] Plaintiff also asserts that this court should follow the district court's decision in *Koehler v. Freightquote.com, Inc.*, 2015 WL 4203962 (D. Kan. July 10, 2015). That decision, however, does little to advance plaintiff's argument that he is entitled to summary judgment. In *Koehler*, the district court denied the plaintiffs' motion for partial summary judgment on the administrative exemption after finding factual disputes about the "primary duties" of the plaintiffs that precluded summary judgment. *Id.* at **21-25.

11

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b). An employee exercising discretion and independent judgment "has authority to make an independent choice, free from immediate direction or supervision," although employees whose decisions are ultimately reviewable can still exercise discretion and independent judgment. *Id*. § 541.202(c).

Quite clearly, evidence exists in the record from which a reasonable factfinder could conclude that plaintiff's primary duty involved the exercise of discretion and independent judgment. Again, *Lutz* is instructive. In *Lutz*, the district court noted that "[t]he fact that the Bank even needs human underwriters—in addition to software programs—suggests that the decisions at issue are more than just mechanical calculations." 2014 WL 2890170, at *17. Second, the court emphasized that while the underwriters' authority was "heavily tempered" by the Bank's lending criteria, the underwriters still had authority to waive or deviate from that criteria in certain instances. *Id*. at *18, *aff'd*, 815 F.3d at 997 (Bank's underwriting guidelines did not prevent the Bank's underwriters from acting outside the parameters of those guidelines). Here, too, there is evidence that plaintiff had the authority to grant an exception for an application that did not meet

12

OTR's underwriting guidelines. That action requires a weighing of different options to decide on an appropriate course of conduct. There is also evidence that plaintiff's duties directly implicate certain factors set forth in § 514.202(b). Evidence that plaintiff helped draft and implement OTR's underwriting guidelines; that plaintiff had the authority to bind OTR to loan risks; and that plaintiff had the authority to deviate from OTR's underwriting guidelines if he deemed appropriate tends to show that plaintiff's primary duty required him to exercise discretion and independent judgment. Finally, there is certainly evidence suggesting that plaintiff exercised discretion and independent judgment on matters of significance. *See Lutz*, 815 F.3d at 997-98 (approval of loan binds the Bank to that risk; denial of loan prevents applicant from acquiring credit).

Because the record contains evidence from which a reasonable factfinder could determine that plaintiff's primary duty included the exercise of discretion and independent judgment with respect to matters of significance, the court denies plaintiff's motion for summary judgment on this issue.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for partial summary judgment (doc. 42) is denied.

**IT IS SO ORDERED.**

Dated this 19th  day of July, 2018, at Kansas City, Kansas.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge