## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Geoffrey Geist ("Geist"), on the one hand, and Aaron Handke ("Handke"), FoxPoint Trucks, LLC ("FoxPoint"), and OTR Leasing, LLC ("OTR") (collectively, "the Company"), on the other hand, to settle any and all differences, disputes, grievances, claims, charges, and complaints, whether known or unknown, that Geist has or arguably may have against the Company and its related persons or entities as of the date of this Agreement, including but not limited to any claims arising out of or in any way relating to Geist's employment with the Company, any claims relating to the separation of his employment with the Company, and any claims that are the subject of the lawsuit styled *Geoffrey Geist v. Aaron Handke d/b/a FoxPoint Trucks, LLC and OTR Leasing, LLC,* pending in the United States District Court for the District of Kansas ("the Court"), Case No. 2:17-cv-02317-HLT ("the Lawsuit").    As used in this Agreement, the term "the Parties" means Geist and the Company.

WHEREAS, Geist filed the Lawsuit alleging that he was not paid overtime and that he was fired in violation of the Fair Labor Standards Act ("FLSA");

WHEREAS, the Company denies Geist's claims alleged in the Lawsuit and alleges that Geist's duties were exempt from the overtime requirement of the FLSA and that his discharge was lawful;

WHEREAS, in the Lawsuit, Geist claimed that he is owed approximately $21,899.99 for unpaid overtime compensation and liquidated damages, which amount is denied and disputed by the Company;

WHEREAS, in the Lawsuit, Geist is seeking approximately $261,115.38 for back-pay damages and liquidated damages resulting from his alleged wrongful discharge, which amount is denied and disputed by the Company;

WHEREAS, the Parties would like to avoid the time, trouble, expense, and uncertainty associated with continued litigation of Geist's claims alleged in the Lawsuit and are settling those claims as a compromise and with no admission of liability by the Company.

WHEREFORE, in consideration for the covenants, conditions, and obligations set forth in this Agreement, the Parties agree as follows:

**1.    Geist's Release:**    Geist hereby forever waives, releases, absolves, and discharges the Company, its predecessors, successors, assigns, parents, subsidiaries, affiliates, board members, third-party administrators, insurers, agents, attorneys, officers, members, shareholders, directors, employees, and all parties related to the Company and its affiliated persons and entities (collectively, "the Released Parties"), whether known or unknown, from any and all claims, charges, demands for relief, or causes of action, whether known or unknown, arising from acts or omissions of any of the Released Parties occurring at any time before or as of the date of Geist's execution of this Agreement.    This release includes, but is

EXHIBIT 1

not limited to, claims arising under the following statutes or the common law: the Kansas Act Against Discrimination; the Kansas Age Discrimination in Employment Act; the Missouri Human Rights Act; Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; the Age Discrimination in Employment Act; the Family and Medical Leave Act; the Fair Labor Standards Act; the Employee Retirement Income Security Act; the National Labor Relations Act; claims for discrimination or retaliation arising under RSMo. § 287.780; claims for public policy wrongful discharge; any claims for wrongful discharge, discrimination, retaliation, harassment, breach of contract, intentional or negligent infliction of emotional distress, defamation, interference with contract, assault, battery, negligence, fraud; or any other cause of action based on federal, state, or local law or the common law, whether in tort or in contract. Geist further agrees that, to the fullest extent permitted by state or federal law, he will not institute any legal or administrative proceeding or otherwise make any complaints about the Released Parties relating in any way to Geist's employment with the Company, the business of the Company, compensation during or following his employment, or the termination of his employment with the Company. Geist further agrees that this full and complete release includes the satisfaction of any claims he may have for emotional distress, embarrassment, humiliation, anxiety, injury to reputation and indignity to his person, unpaid wages, commissions, bonuses, general damages, liquidated damages, punitive damages, reinstatement, prejudgment interest, attorneys' fees, costs, expenses, or any other form of legal or equitable relief. Geist further acknowledges that the payment by the Company of the amounts contained in Paragraph 2 of this Agreement will be in accord and satisfaction of any amounts he claims he is owed by the Company in connection with his employment with the Company.

2.      **Payment:** The Company agrees that it will, within fourteen (14) days following the date on which the Court enters an Order approving this Agreement, pay Geist and his attorney the amounts set forth in this Paragraph in exchange for the covenants, conditions, and obligations set forth by Geist in this Agreement. The payment will be made as follows:

A.      Misclassification Claim Payments.

i.      The Company will deliver a check to Geist's attorney made payable to "Geoffrey Geist" in the gross total amount of Two Thousand Eighty-Five Dollars and Forty-One Cents ($2,085.41), less any withholdings required by law, in satisfaction of any and all of Geist's disputed claims for unpaid overtime under Geist's misclassification claim alleged in the Lawsuit. The Company will issue to Geist an IRS Form W-2 in connection with this payment;

ii.     the Company will deliver a check to Geist's attorney made payable to "Geoffrey Geist" in the amount of Two Thousand Eighty-Five Dollars and Forty-One Cents ($2,085.41), in satisfaction of any and all disputed claims for Geist's non-pecuniary damages under Geist's misclassification claim alleged in the Lawsuit, including but not limited to Geist's disputed claims

for liquidated damages.  The Company will issue to Geist an IRS Form 1099 in connection with this payment;

iii.  the Company will deliver a check to Geist's attorney made payable to "the Cornerstone Law Firm" in the amount of Four Thousand Six Hundred Eighty-Four Dollars and Nineteen Cents ($4,684.19), in satisfaction of Geist's disputed attorneys' fees and costs incurred in connection with the prosecution of Geist's misclassification claim in the Lawsuit.  Of this payment:

    a.  Four Thousand One Hundred Seventy Dollars and Eighty-Two Cents ($4,170.82) represents a reasonable allocation of the attorneys' fees incurred by Geist in connection with the prosecution of Geist's misclassification claim in the Lawsuit.  The Company will issue to the Cornerstone Law Firm any IRS Form 1099 required in connection with this payment;

    b.  Five Hundred Thirteen Dollars and Thirty-Seven Cents ($513.37) represents the costs actually incurred by Geist's lawyers in connection with the prosecution of Geist's misclassification claim in the Lawsuit. The Company will issue to the Cornerstone Law Firm any IRS Form 1099 required in connection with this payment.

B.  <u>Wrongful Discharge Claim Payments.</u>





**3.      No Representations as To Taxability of Proceeds From This Agreement**: Geist acknowledges and agrees that the Company has not made any representations to him as to the taxability or nontaxability of the payments to be made pursuant to Paragraphs 2(A)(ii)-(iii) and 2(B)(ii)-(iii) of this Agreement.  Geist further acknowledges and agrees that he shall be solely responsible for the payment of any taxes or penalties that may be assessed by any taxing authority in connection with the payments made by the Company pursuant to Paragraphs 2(A)(ii)-(iii) and 2(B)(ii)-(iii) of this Agreement and Geist agrees to indemnify and hold the Company harmless from any taxes or penalties assessed by any taxing authority against the Company in connection with the payments made under Paragraphs 2(A)(ii)-(iii) and 2(B)(ii)-(iii) of this Agreement.

**4.      Court Approval of this Agreement and Dismissal of the Lawsuit**:  The Parties will, through their attorneys, promptly prepare and file a motion with the Court asking the Court to approve this Agreement (while keeping the terms of this Agreement confidential except as provided by law) and to dismiss the Lawsuit with prejudice.  The parties shall bear their own costs and attorneys' fees in connection with the Lawsuit.

**5.      Waiver of Future Employment**:  Geist agrees and warrants that he, by execution of this Agreement, removes himself from the pool of potential applicants and that he will never in the future apply for, solicit, or accept employment (whether permanent, temporary, full-time, part-time, or through a temporary agency) with the Company or any of its affiliated companies, predecessors, successors, affiliates, assigns, parents, subsidiaries, or divisions.  In the event that Geist accepts employment with any entity (whether knowingly or unknowingly) in violation of the foregoing provision, Geist agrees that his employment may be immediately terminated, and he further waives any and all legal and/or equitable claims in relation thereto.

**6.**     **Neutral Reference:**   Geist will instruct third parties seeking a reference concerning his employment with the Company to contact Laura Stack, OTR's Chief Financial Officer, at (913) 953-8963, laura.stack@otrleasing.com, who will respond to such inquiries only by providing Geist's dates of employment, positions held, and confirmation of his wages earned.  Nothing in this Paragraph of this Agreement shall be deemed to preclude any person from providing truthful testimony or information pursuant to subpoena, court order, as required by law, or in conjunction with legal process.

**7.**     **Confidentiality:**   Geist agrees to keep strictly confidential the terms in Paragraph 2(B) of this Agreement (relating to Geist's wrongful discharge claim) and the facts (other than as described in this Agreement) giving rise to the wrongful discharge claim relating to the terms in Paragraph 2(B) of this Agreement.  Geist agrees that he will not disclose any information related to the facts (other than as described in this Agreement) giving rise to the wrongful discharge claim and the information contained in Paragraph 2(B) of this Agreement except: (i) to his spouse, attorneys, or professional financial advisors; provided that each such person shall be instructed to and must agree to treat the information relating to Paragraph 2(B) of this Agreement as strictly confidential in accordance with the terms of this Agreement; (ii) to any taxing authorities; (iii) to the Court as necessary to obtain the Court's approval of this Agreement; or (iv) as compelled by law.  In the event Geist is compelled by law to disclose the terms of Paragraph 2(B) of this Agreement, Geist must notify the Company in advance of such disclosure about the circumstances in which he is being compelled to disclose such information.  If asked by a third party about the status of his wrongful discharge claim in the Lawsuit, Geist will respond to any such inquiry only by stating, in substance, that "the matter has been resolved."

**8.**     **Non-Disparagement:**   Geist agrees that he will neither make nor solicit any comments or statements, whether written or verbal, to the media, industry groups (such as professional or trade-related organizations and associations), on social media forums (such as Facebook, LinkedIn, or blogs), or to third parties (including but not limited to current or former employees of the Company and its affiliated entities) which may be considered to be derogatory, disparaging, or detrimental to the reputation of the Company, its employees, or its products and services.  Nothing in this Paragraph of this Agreement shall be deemed to preclude any person from providing truthful testimony or information pursuant to subpoena, court order, as required by law, or in conjunction with legal process.

**9.**     **Medicare and Medicaid Warranty:**   Geist warrants and represents that he is not enrolled in Medicare or a Medicare Advantage Plan or Medicaid, and is not a recipient of benefits from Medicare or a Medicare Advantage Plan or Medicaid.  Notwithstanding the foregoing, Geist warrants and represents that it is solely his obligation to satisfy any and all liens and/or subrogation interests of any kind, including but not limited to any past and/or future liens, and including but not limited to any lien of or relating to legal services, healthcare services, held by Medicare, and/or Medicare Advantage and/or Medicaid against the amount paid to him under this Agreement.  Geist shall fully indemnify, defend, exonerate, and hold harmless the Released Parties from and against any claim by any subrogated interest and/or lienholder arising from the settlement and/or from payment by or on behalf of the Released

Parties, individually and/or collectively, including but not limited to the costs of any litigation and/or attorneys' fees. In reaching this settlement, the parties acknowledge that they have attempted to resolve all matters between them in compliance with both state and federal law, and they believe that the settlement terms have adequately considered any actual and/or potential interest Medicare, Medicaid, Medicare Advantage Plan and/or any third party has or may have. In no event do the settlement terms reflect any attempt to shift responsibility for payment of medical expenses to Medicare, Medicaid or Medicare Advantage. Geist agrees to waive any and all future actions against the Released Parties for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A). Further, Geist agrees to reasonably cooperate with the Released Parties upon request with respect to any claim that the Centers for Medicare & Medicaid Services (or any related agency representing Medicare's or Medicaid's interests) may make and for which Geist is required to indemnify the Released Parties under this Paragraph.

**10.** **No Admission Of Liability:** The parties acknowledge and agree that this Agreement is entered into as a compromise to avoid the time, trouble, and expense of litigating Geist's disputed claims alleged in the Lawsuit, and the parties acknowledge and agree that the terms and conditions set forth in this Agreement should not be construed as an admission of liability by the Company or any entity or individual associated with the Company.

**11.** **Remedies and Attorneys' Fees and Costs:** A non-breaching party shall be entitled to injunctive relief (without bond) in connection with any breach or threatened breach of this Agreement, as well as any other remedy (including monetary damages) provided by law. In any action or proceeding arising under this Agreement, the prevailing party shall be awarded and recover from the non-prevailing party the reasonable attorneys' fees and costs incurred by the prevailing party in such action or proceeding, in addition to any other remedy available at law or in equity.

**12.** **Severability:** In the event any portion of this Agreement is held to be unenforceable, the remainder of the Agreement shall remain in full force and effect and shall be enforced in harmony with the purpose of the Agreement and the intent of the parties at the time of its making.

**13.** **Applicable Law:** This Agreement shall be interpreted and construed in accordance with the laws of the State of Kansas.

**14.** **No Presumption Against Drafter:** Geist and the Company have cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, it shall not be construed for or against any party.

**15.** **Successors:** This Agreement shall be binding upon and inure to the benefit of the parties hereto, as well as upon their heirs, next of kin, executors, administrators, successors, and assigns.

**16.** **Entire Agreement:** The parties stipulate that this Agreement represents the complete compromise and settlement of all actual or potential disputes as of its effective date.

Any and all prior agreements, either written or oral, that are not embodied in this Agreement are of no force and effect. This Agreement supersedes the Settlement Agreement signed by the parties on November 2 and 5, 2018, and the parties agree that the Settlement Agreement signed by the parties on November 2 and 5, 2018 is void and of no further force or effect. No modification of this Agreement shall be valid unless set forth in writing and signed by the parties. The parties agree that a signed copy of this Agreement shall have the same force and effect as the original Agreement.

17. **Acknowledgments:** Geist hereby acknowledges and agrees:

    a.    that he had reasonable time to review and consider the terms and effect of this Agreement, that he has hereby been told in writing to discuss the terms of this Agreement with an attorney of his own choosing before signing this Agreement, and that he has in fact consulted with an attorney of his own choosing about the terms and effect of this Agreement before signing it;

    b.    that he understands that legal rights are being waived by signing this Agreement; however, this Agreement does not waive any rights or claims that may arise after this Agreement is signed by him;

    c.    that he has reviewed this Agreement, that this Agreement is written in a manner that is understandable to him and that he understands the entirety of this Agreement and the effects of signing this Agreement; and

    d.    THAT HE SIGNS THIS AGREEMENT AS HIS OWN FREE ACT AND DEED, WITHOUT ANY COERCION OR DURESS, AND THAT HE HEREBY RELEASES THE RIGHTS AND CLAIMS SET FORTH ABOVE IN EXCHANGE FOR THE CONSIDERATION SET FORTH IN THIS AGREEMENT TO WHICH HE WOULD NOT OTHERWISE BE ENTITLED.

IN WITNESS WHEREOF, as their free and voluntary act, the parties have executed this Agreement as of the date indicated.

GEOFFREY GEIST                          11/9/18
                                        Date

AARON HANDKE                         11/13/18
                                        Date

_____                    11/13/18
FOXPOINT TRUCKS, LLC                             Date
By:  Aaron Handke, Chief Executive Officer

_____                    11/13/18
OTR LEASING, LLC                                 Date
By:  Aaron Handke, Chief Executive Officer

RELEASE OF ATTORNEYS' LIEN:


/s/ Ryan M. Paulus   Ryan Paulus                 11/12/2018
_____                    Date
RYAN PAULUS LAW FIRM L.L.C.
D/B/A CORNERSTONE LAW FIRM
By:  Ryan Paulus
Attorney for Geoffrey Geist